IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARSHELL L. STEHLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 02: 11-CV-1445 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

July 2, 2012

**I.     Introduction**

Plaintiff, Marshell L. Stehley, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") which denied her application for supplemental security income ("SSI") and disability insurance benefits ("DIB") under title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-403; 1381-1383(f).

**II.     Background**

**A.     Facts**

Plaintiff was born on October 2, 1960. (R. 688). She has a ninth grade education and previous work experience as a prep cook, assembler in a plastics factory, hospital housekeeper, cashier, and instrument assembler. (R. 688, 889-891, 928).

1

She alleges disability as of September 1, 2001, due to degenerative disc disease in her cervical and lumbar spine, fibromyalgia, restless leg syndrome, headaches, depression, anxiety, and irritable bowel syndrome. (R. 148, 156, 894). The record reflects that Plaintiff has not engaged in substantial gainful work activity since having alleged disability in 2001. (R. 674).

Plaintiff was involved in a motor vehicle accident on September 2, 2001, after which she began to complain of headaches and pain in her neck and back. (R. 237).

**B.     Procedural History**

Plaintiff initially filed an application for SSI and DIB on April 13, 2004, in which she claimed total disability since September 1, 2001. An administrative hearing was held on October 11, 2005 before Administrative Law Judge Patricia Henry ("ALJ"). Plaintiff was represented by counsel and testified at the hearing.

On February 24, 2006, the ALJ rendered an unfavorable decision to Plaintiff in which she found that Plaintiff was not disabled within the meaning of the Act. The ALJ's decision became the final decision of the Commissioner on August 4, 2006 when the Appeals Council denied Plaintiff's request to review the decision of the ALJ.

On November 27, 2006, Plaintiff filed her first Complaint in this Court in which she sought judicial review of the decision of the ALJ. On April 4, 2008, this Court remanded Plaintiff's case to the Commissioner with specific directions for the ALJ to "consider and evaluate all of Plaintiff's subjective complaints, and their effect on her ability to perform other relevant work," and to "conduct a two step analysis relating to Plaintiff's headaches. If, after considering all record evidence relating to Plaintiff's headaches she determines that her

headaches are severe, she should continue with the remainder of the five-step analysis as described in the regulations." (R. 717, 719).

Following remand, ALJ Henry conducted a supplemental hearing on November 8, 2008. Plaintiff was represented by counsel and testified at the hearing. Timothy E. Mahler, an impartial vocational expert, also testified at the hearing.

On February 25, 2009, the ALJ again rendered an unfavorable decision to Plaintiff. The ALJ found that Plaintiff had a number of severe impairments, including migraine headaches and fibromyalgia, but that none of the impairments either singly or in combination medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (R. 675, 684). The ALJ also determined that while Plaintiff is unable to perform any of her past relevant work, she has the residual functional capacity to perform a wide range of sedentary work, with the following limitations: only occasional stooping, balancing, kneeling or climbing; avoid crouching or crawling, performing only simple, routine, repetitive work that is not performed in a fast-paced production environment and involves only simple work-related decision, involves relatively few work place changes, and has only occasional contact with supervisors, coworkers or the public. (R. 685).

The ALJ's decision became the final decision of the Commissioner on September 12, 2011, when the Appeals Council denied Plaintiff's request to review the decision of the ALJ.

On November 11, 2011, Plaintiff filed her second Complaint in this Court in which she again sought judicial review of the decision of the ALJ. The parties have filed cross-motions for summary judgment.  Plaintiff contends that the ALJ erred when she:

1) Rejected the opinion of Kenneth R. Gold, M.D., Plaintiff's treating rheumatologist;

2) Failed to discuss the September 2004 and October 2004 medical records from Latrobe Area Hospital which detail hospital treatments for migraine headaches;

3) Failed to analyze Plaintiff's GAF score; and

4) Failed to accurately convey all of Plaintiff's impairments, and limitations they cause, in the hypothetical question posed to the vocational expert.

The Commissioner contends that the decision of the ALJ should be affirmed as it is supported by substantial evidence.

The Court agrees with the Commissioner and will therefore grant the motion for summary judgment filed by the Commissioner and deny the motion for summary judgment filed by Plaintiff.

### III.      Legal Analysis

####    A.      Standard of Review

The Act limits judicial review of disability claims to the Commissioner's final decision. 42 U.S.C. §§ 405(g)/1383(c)(3). If the Commissioner's finding is supported by substantial evidence, it is conclusive and must be affirmed by the Court. 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The United States Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971); *Capato v. Commissioner of Social Security*, 631 F.3d 626, 628 (3d Cir. 2010) (internal citation

omitted). It consists of more than a scintilla of evidence, but less than a preponderance. *Thomas v. Commissioner of Social Security*, 625 F.3d 798 (3d Cir. 2010).

In situations where a claimant files concurrent applications for SSI and DIB, courts have consistently addressed the issue of a claimant's disability in terms of meeting a single disability standard under the Act. *See Burns v. Barnhart*, 312 F.3d 113, 119 n.1(3d. Cir 2002)("This test [whether a person is disabled for purposes of qualifying for SSI] is the same as that for determining whether a person is disabled for purposes of receiving social security disability benefits [DIB]. *Compare* 20 C.F.R. § 416.920 *with* § 404.1520."); *Sullivan v. Zebley*, 493 U.S. 521, 525 n.3 (1990)(holding that regulations implementing the Title II [DIB] standard, and those implementing the Title XVI [SSI] standard are the same in all relevant aspects.); *Morales v. Apfel*, 225 F. 3d 310, 315-16 (3d. Cir 2000)(stating claimants burden of proving disability is the same for both DIB and SSI).

When resolving the issue of whether an adult claimant is or is not disabled, the Commissioner utilizes a five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). This process requires the Commissioner to consider, in sequence, whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work. *See* 42 U.S.C . § 404.1520; *Newell v. Commissioner of Social Security*, 347 F.3d 541, 545-46 (3d Cir 2003) (*quoting Burnett v. Commissioner of Social Security*, 220 F.3d 112, 118-19 (3d Cir. 2000)).

To qualify for disability benefits under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from

engaging in any substantial gainful activity for a statutory twelve-month period." *Fargnoli v. Halter,* 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citation omitted); 42 U.S.C. § 423 (d)(1) (1982). This may be done in two ways:

    (1)  by introducing medical evidence that the claimant is disabled per se because he or she suffers from one or more of a number of serious impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1.  *See Heckler v. Campbell*, 461 U.S. 458 (1983); *Newell,* 347 F.3d at 545-46; *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004); or,

    (2)  in the event that claimant suffers from a less severe impairment, by demonstrating that he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ."  *Campbell,* 461 U.S. at 461 (citing 42 U.S.C. § 423 (d)(2)(A)).

    In order to prove disability under the second method, a claimant must first demonstrate the existence of a medically determinable disability that precludes plaintiff from returning to his or her former job.  *Newell,* 347 F.3d at 545-46; *Jones,* 364 F.3d at 503.  Once it is shown that claimant is unable to resume his or her previous employment, the burden shifts to the Commissioner to prove that, given claimant's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy.  *Rutherford*, 399 F.3d at 551; *Newell,* 347 F.3d at 546; *Jones*, 364 F.3d at 503; *Burns*, 312 F.3d at 119.

    Where a claimant has multiple impairments which may not individually reach the level of severity necessary to qualify any one impairment for Listed Impairment status, the Commissioner nevertheless must consider all of the impairments in combination to determine

whether, collectively, they meet or equal the severity of a Listed Impairment. *Diaz v. Commissioner of Social Security*, 577 F.2d 500, 502 (3d Cir. 2010); 42 U.S.C. § 423(d)(2)(C) ("in determining an individual's eligibility for benefits, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity").

In this case, the ALJ determined that Plaintiff was not disabled within the meaning of the Act at the fifth step of the sequential evaluation process. In making this determination, the ALJ concluded that based on Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

  **B.**  **Discussion**

As set forth in the Act and applicable case law, this Court may not undertake a de novo review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3rd Cir. 1986), *cert. denied.*, 482 U.S. 905 (1987). The Court must simply review the findings and conclusions of the ALJ to determine whether they are supported by substantial evidence. 42 U.S.C. § 405(g); *Schaudeck v. Comm'n of Soc. Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999).

  1.  *The ALJ appropriately gave little weight to the opinion of Kenneth R. Gold, M.D., Plaintiff's treating rheumatologist*

Plaintiff argues that the ALJ improperly discredited the medical opinion of Plaintiff's treating physician, Kenneth R. Gold, M.D., who treated Plaintiff every two to three months from October 2006 through October 2008 for fibromyalgia and restless leg syndrome (R. 881). On

September 24, 2008, Dr. Gold filled out an Employability Assessment Form for the Pennsylvania Department of Welfare. (R. 849-850). On the form, Dr. Gold checked a box, which indicated that Plaintiff was "permanently disabled." (R. 850).

On December 9, 2008, Dr. Gold completed Plaintiff's interrogatories in which he opined that Plaintiff would not be able to work eight hours without taking more than the usual amount of breaks because of her pain, fatigue and difficulty with concentration, that she would need to change her position frequently and that she would have trouble completing tasks in a timely manner. (R. 882). Dr. Gold opined that Plaintiff met the American College of Rheumatology criteria for fibromyalgia when asked to describe the clinical findings and diagnostic techniques that supported his opinion. (R. 882).

When making a disability determination, treating physicians' reports are given "great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." *Morales*, 225 F.3d at 317. However, "a statement by a plaintiff's treating physician supporting an assertion that she is disabled or unable to work is not dispositive of the issue." *Adorno v. Shalala* 40 F.3d 43, 47-48 (3d Cir. 1994). Under the regulations, a physician's opinion that Plaintiff is disabled is considered a medical source opinion on issues that are to be decided by the Commissioner. 20 C.F.R. § 404.1527(d)(2012).

The ALJ must also review "all medical findings and other evidence presented in support of the attending physician's opinion of total disability" *Adorno*, 40 F.3d at 48. While weighing the credibility of any of the findings and evidence the ALJ "must give some indication

of the evidence that he rejects and his reason(s) for discounting that evidence." *Fargnoli* 247 F.3d at 43.

The ALJ gave Dr. Gold's opinion little weight for the following five reasons. First, the ALJ found that Dr. Gold's opinion was not supported by his own treatment record. The medical evidence of record, specifically Dr. Gold's records, reflect that he consistently noted that Plaintiff had normal range of motion in all of her joints with no inflammatory changes. (R. 782, 786, 789, 792, 795, 798). While Plaintiff had a limited range of motion when seen by Dr. Sirsikar, the consultative examiner, she consistently had a normal range of motion when examined by her treating physician both before and after the consultation. (R. 833, 681). Plaintiff reported no muscle weakness to Dr. Gold. (R. 782, 785, 788, 791, 794, 797).

Next, the ALJ found that Dr. Gold's opinion was also contradicted by physical therapy reports. For example, on November 19, 2004, it was noted that Plaintiff was able to regain full range of motion and functional strength of her right shoulder from a reduced range of motion after six therapy sessions. (R. 769). On June 22, 2007, Plaintiff reported improvement to pain and numbness on her left shoulder with the use of a TENS unit after three physical therapy sessions. Plaintiff stated during her 2007 physical therapy sessions that she was able to be independent in performing household chores and also some outdoor chores. (R. 775).

Third, Dr. Gold stated that he based his opinion on the fact that Plaintiff met the American College Of Rheumatology criteria for fibromyalgia. The ALJ never disputed that Plaintiff has fibromyalgia and in fact accepted this diagnosis, she simply disagreed with Plaintiff's alleged reported limitations from her fibromyalgia, stating that "the medical evidence

does not establish that she has an inability to ambulate effectively or perform fine and gross motor skills effectively." (R. 685).

Fourth, Dr. Gold did not explain how he concluded that Plaintiff would have difficulty concentrating or completing tasks. Again, the only clinical findings and diagnostic techniques that support the conclusions that Dr. Gold set forth in the interrogatory responses was that Plaintiff meets the American College of Rheumatology criteria for fibromyalgia. (R. 882).

Lastly, in discounting Dr. Gold's opinion, the ALJ appropriately considered Plaintiff's subjective complaints about her pain and limitations and found Plaintiff's testimony to not be credible.

It is ultimately the job of the ALJ to make a determination of disability based on all medical findings and evidence. *Adorno*, 40 F.3d at 48. Such evidence includes subjective testimony about pain. However, subjective statements about pain "shall not alone be conclusive evidence of disability." 42 U.S.C. § 423(d)(5)(A). Objective medical evidence of pain, such as deteriorating nerve or muscle tissue, must be considered in making a disability determination. *Id*. When making a determination about subjective claims of pain, the ALJ considers factors such as daily activities, intensity of the pain, the effectiveness of any medication or treatments. 20 C.F.R. § 404.1529(c)(3). When reviewing the ALJ's decision, his/her judgment as fact-finder is given great deference, since the ALJ "actually heard the witnesses' testimony and observed their demeanor." *Davis v. Califano*, 439 F. Supp. 94, 98 (E.D. Pa. 1977). In particular, the ALJ "must decide issues of credibility and appropriate weight to be given to the exhibits." *Id.*

Courts have "recognized that a diagnosis of fibromyalgia does not necessarily equate with a finding of disability under the Act." *Singleton v. Astrue*, 542 F. Supp. 367, 377 (D. Delaware 2008). Due to the subjective quality of this disease "the credibility of a claimant's testimony regarding her symptoms takes on substantially increased significance in the ALJ's evaluation of the evidence." *Id*. (*quoting Brunson v. Barnhart*, 2002 WL 393078, 16 (E.D.N.Y. Mar. 14, 2002)). As stated above, deference must be given to the ALJ's determination of credibility.

The ALJ considered and weighed Plaintiff's subjective complaints of pain before making any disability determinations. The ALJ discussed in detail numerous reasons why the subjective claims of the "intensity, persistence and limiting effects of these symptoms" were not credible. (R. 687). The ALJ stated eight reasons for the credibility determination of Plaintiff's subjective complaints. These reasons included the ALJ's personal observations of Plaintiff at the hearing, Plaintiff's reported activities of daily living, her report of relief from the pain after physical therapy, and the objective medical findings of record. (R. 687-688). The ALJ observed that Plaintiff "testified that she can only sit for about 15 minutes before she begins experiencing sharp pain in her lower back." (R. 688). Despite this testimony, the ALJ observed that Plaintiff was able to sit "for an hour during the hearing without experiencing any apparent pain." (R. 688).

The ALJ determined that "the claimants statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 687).

The Court concludes that substantial evidence supports the ALJ's conclusion to give Dr. Gold's opinion little weight because it was contradicted by objective medical findings, as well as contradicted by the ALJ's own credibility determination of Plaintiff's subjective complaints of pain.

2.  *The ALJ did not err when she failed to analyze two inpatient hospital records dealing with Plaintiff's migraine headaches.*

Plaintiff argues that the ALJ erred when she did not discuss or consider the medical records from Latrobe Area Hospital from 9/3/2004 and 10/3/2004 while discussing Plaintiff's hospital treatment for migraine headaches.

In reviewing applicable law, the Court observes that any decision by the Commissioner must be based on all relevant, probative and available evidence that has been "explicitly" weighed. *Adorno*, 40 F.3d at 48. However it is not expected that "the ALJ make reference to every relevant treatment note in a case where the claimant, …, has voluminous medical records." *Fargnoli* 247 F.3d at 42. Plaintiff's voluminous medical records date back to September 2001 following her motor vehicle accident. (R. 237). Plaintiff has medical records from physical therapists, neurosurgeons, her primary care physician, a gastroenterologist, a psychologist and a chiropractor. (R. 245-46, 266-343, 375-80, 382-84, 395-97, 421-22, 522-23, 762-67, 769, 775, 780-805). Plaintiff has had MRI scans, X-rays, an endoscopic retrograde cholangiopancreatography (ERCP) with sphincterotomy, her gallbladder removed, a pulmonary function test, an echiocardiogram, and a sleep study. (R. 357-58, 405, 438, 527-43, 821, 823,

854-55, 863-66, 867-68). Plaintiff also had numerous visits to the ER from April 2004 through May 2008. (R. 363-67, 398-423, 458-62, 465-76, 478-83, 514-19, 550-58, 839-45).

While the medical records are voluminous, the ALJ repeatedly mentions Plaintiff's migraine headaches. (R. 675-77, 679, 686-87). In making the credibility determination of Plaintiff's statements, the ALJ determined that Plaintiff "has headaches but has only infrequently sought emergency room treatment for them during the relevant time period." (R. 687).

While the ALJ did not specifically reference the medical records for September 3, 2004 and October 10, 2004, the Court finds that the ALJ thoroughly discussed Plaintiff's complaints of migraines. It was not necessary that the ALJ explicitly address every treatment. Both visits do not add any new information to the record, and are merely cumulative of her other complaints.

The Court concludes that the ALJ did not err when she did not specifically reference two hospital records, as the ALJ fully discussed Plaintiff's history of migraine headaches.

3. *The ALJ did not err when she did not analyze Plaintiff's GAF score.*

"The law of case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation." *Arroyo v. Astrue,* 347 Fed. App'x 802 (3d Cir. 2009) (*quoting Pub. Interest Research Group of N.J. Inc. v. Magnesium Elektron, Inc.,* 123 F.3d 111, 116 (3d Cir. 1997)). The law of the case doctrine "requires the administrative agency, on a remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart." *Wilder v. Apfel*, 153 F.3d 799, 803 (7th

Cir. 1998); *see also Grigsby v. Barnhart*, 294 F.3d 1215 (10th Cir. 2002); *Brachtel v. Apfel*, 132 F.3d 417, 419-20 (8th Cir. 1997).

This Court remanded the case to the Commissioner with specific instructions for the ALJ to address Plaintiff's fibromyalgia and headaches. Therefore, the ALJ only had to address those limited issues during the supplemental hearing. Plaintiff's GAF score was addressed in the ALJ's first decision. (R. 20).

Accordingly, the Court finds that contrary to that which Plaintiff argues, the law of the case prevented the ALJ from re-examining an issue that was resolved earlier in the litigation. The ALJ did not have an obligation to re-examine Plaintiff's GAF score.

    4.    *The ALJ accurately portrayed all of Plaintiff's impairments, and the limitations they caused in the hypothetical question to the Vocational Expert.*

In order to determine whether a plaintiff is capable of performing substantial gainful activity that exists in significant numbers in the national economy, the ALJ may rely upon the testimony of a vocational expert ("VE"). Testimony of a VE constitutes substantial evidence for the purpose of judicial review when a hypothetical question encompasses all of a plaintiff's impairments which are supported by the medical record. *Ramirez v. Barnhart*, 372 F. 3d 546 (3d Cir. 2004); *Burns v. Barnhart*, 312 F. 3d 113, 120 (3d Cir. 2002); *Chrupcala v. Heckler*, 829 F.2d 1269, 1276 (3d Cir. 1987). Hypothetical questions need only include factors that are supported by objective record medical evidence. *Chrupcala*, 829. F. 3d at 1271. It is not necessary for the ALJ to include facts in the hypothetical question that are supported <u>only</u> by subjective testimony. *Id.*

The ALJ posed the following hypotheticals to the VE at the administrative hearing in this matter:

> Q: All right, thank you. Assume the hypothetical individual with the claimant's education, training and work experience, who was limited to a light range of work, is limited to occasional postural maneuvers such as stooping, balancing, kneeling, crouching, crawling and climbing. No, leave off crouching and crawling. (sic) And she should avoid crouching and crawling. And must avoid hot/cold temperature extremes, [and] excessive noise and vibration, extreme dampness and humidity, direct outside sun light, breakthrough flashing lights or freak video monitor work, limited to simple routine repetitive tasks, not performed in a fast-paced production environment, involving only simple-work related decisions and in generally relatively few work-place changes. What could such a person perform of any of the jobs that this individual has performed in the past?
>
> A: Probably the plastic assembler, your honor.
>
> \* \* \*
>
> Q: Okay. Are there other jobs in the local and national economy that such an individual could perform?
>
> A: Yes, your honor. With the limitation indicated, in your hypothetical, I can offer the following light jobs. There are labelers and markers. The DOT is 920.687-126. 140 in the local labor market, which is the John is establish Altoona metropolitan statistical area. 64,000 nation. There are also laundry folders. DOT is 369.687-018. 100 local, 48,000 nation. Hostesses and greeters. DOT is 3512.667-010. 130 local, 54,000 nation. And –office helpers. DOT is 239.567-010. 125 local, 132,000 nation. These are all full-time, light, unskilled jobs, your honor.
>
> Q: Okay. Now, if in addition an individual was limited to only occasional interaction with supervisors, coworkers, and the general public, would that compromise any of these jobs?
>
> A: Let's see. No, your honor.
>
> Q: And if in addition, an individual had to --- okay, no that's all for that question. Now also assume a hypothetical individual who was limited to a sedentary range of work, is also limited to occasional postural maneuvers such as stooping, balancing, kneeling, and climbing, and must avoid crouching and crawling. Must avoid hot/cold temperature extremes, extreme excessive noise and vibration, extreme dampness and

humidity, must avoid direct sun light, bright flashing lights, frequent video monitor work, limited to the same simple, routine repetitive tasks I mentioned before, would such an individual, are there jobs in the local and national economy that such an individual could were form?

A: A few, your honor. At sedentary with those limitations, there are addressers. The DOT is 209.576-010. 150 in the local labor market, 100,000 nation. There are waxers or polishers of glass products. DOT is 779.687-038. 105 local, 66,000 nation. There are inspector checkers. DOT is 669.687-014. 85 local, 37,000 nation. And there are assemblers. DOT is 713.687-018. 200 local, 149,000 nation. These are full-time, light – excuse me, sedentary, unskilled jobs.

Q: All right. Now, again, if again an individual was limited to occasional interaction with supervisors, coworkers, and number members of the general public, would that compromise any of these jobs?

A: No, your honor.

Q: Would these jobs also permit her an opportunity, maybe, to sit or [stand] at their work place, just if they had to get up for a couple seconds or a minute or so?

A: The sedentary job, yes, your honor. At light –let's see.
Q: So, just at the sedentary?

A: Oh, sedentary, I'm sorry.

Q: So they would have the sit-stand option?

A: Yes, your honor. Yes, they're stationary jobs.

Q: What is customarily expected by employers in terms of Social Security numbers and routine rest break, as well as time on-task expectations?

A: In competitive unskilled jobs such as these workers [will] usually miss one day a month and still keep their jobs. Normally, in an eight-hour work day, they are given a break every two hours, usually two 15 minute breaks and a half an hour for lunch. While they're working, their expected to be productive or on-task at least 85 to 90 percent of the work time and over and above breaks.

(R. 928-932).

Plaintiff argues the hypothetical was incomplete because it did not include limitations on restroom use with regard to Plaintiff's irritable bowel syndrome and did not include limitations on specific time intervals for a sit/stand option and whether those intervals were consistent with vocational standards listed in the Dictionary of Occupational Titles.

However, while Plaintiff was diagnosed with irritable bowel syndrome, the ALJ stated that Plaintiff "has not had gastrointestinal hemorrhaging requiring blood transfusion, involuntary weight loss, obstructions, or a need for dietary supplementation." (R. 685) There is also nothing in the record, other than Plaintiff's testimony, that she has to use the bathroom frequently. (R. 914).

As to the sit/stand option, the only evidence in the record to indicate a need for time intervals for a sit/stand option is through Plaintiff's testimony that she is up and down about every five minutes, with longer periods of laying down. (R. 917). There is no objective medical evidence to support a need for a sit/stand option with time intervals. The ALJ did not err in failing to include a sit/stand option with time intervals in the hypothetical, and therefore, it is not necessary to consider whether any intervals are consistent with vocational standards listed in the Dictionary of Occupational Titles.

The Court finds that the hypothetical questions posed to the VE accurately and appropriately reflected Plaintiff's age, background, and physical and mental impairments that were supported by the objective medical findings of record.

**IV.**     **Conclusion**

It is undeniable that Plaintiff has a number of impairments, and this Court is sympathetic and aware of the challenges which Plaintiff faces in seeking gainful employment. Under the applicable standards of review and the current state of the record, however, the Court must defer to the reasonable findings of the ALJ and her conclusion that Plaintiff is not disabled within the meaning of the Social Security Act, and that she is able to perform a wide range of work at the sedentary level.

For these reasons, the Court will grant the Motion for Summary Judgment filed by the Commissioner and deny the Motion for Summary Judgment filed by Plaintiff.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARSHELL L. STEHLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 02: 11-CV-1445 |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**ORDER OF COURT**

**AND NOW**, this 2nd day of July, 2012, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED**, **ADJUDGED, AND DECREED** that:

1. The Motion for Summary Judgment filed by Plaintiff, Marshell L. Stehley (*Document No. 18*) is **DENIED**; and

2. The Motion for Summary Judgment filed by Defendant, Michael J. Astrue, Commissioner of Social Security (*Document No. 16*) is **GRANTED**; and

3. The Clerk will docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc:  Michael V. Quatrini, Esq.
   Quatrini Rafferty, P.C.
   Email: mvq@qrlegal.com

   Michael Colville
   Assistant United States Attorney
   Email: michael.colville@usdoj.gov